Case number 23-7018, Brotherhood of Railroad Signalmen versus National Railroad Passenger Corporation Abelance. Mr. Munro for the abelance, Mr. Edelman for the ability. Good morning, your honors. I'm Don Munro for Amtrak. This is a case involving judicial review arbitration award under the Railway Labor Act. I have two points that I would like to emphasize this morning. First concerns our position that the award can be interpreted as applying industry common law. And the second concerns the union's position that the award must be interpreted as applying external principles jurisdiction. First, with respect to industry common law, I'd like to note that it is undisputed that the party's contract incorporates industry common law. Union does not deny that it's brief, nor does it deny that that industry common law incorporates principle that neither side may pursue hypothetical claims or requests for advisory opinions. So that's the contractual context in which this award was issued. That's the contract that the parties have. It incorporates those principles. And where did the arbitrator even discuss the contract? Well, in the arbitrator's award, this is a joint appendix, page 18, the most critical page in the appendix. You have the top of the page. The board first either characterizes Amtrak's argument or is discussing its view of the party's contract. In that paragraph, it is describing exactly the contractual principles. Which page are you on? This joint appendix, page 18. All right. You've got the background in your favor. I made a chart of both sides. But in your favor, the arbitrator says when Amtrak bought the Washington Terminal Company, they had to attach a resolution or amendment to the collective bargaining agreement. So that indicates that that has to be done again with the purchase of this REA building. Yes, your honor. That goes to the merits. All right. But then the arbitrator speaks, and I think there's a, on page 17, the arbitrator says that Amtrak responded, this was back in 2015, that signalman work was not within the scope of the this case. The other, there's at least another one, and that's where Judge Friedrich, in her 2017 decision, says that Amtrak has notified the union that they're going to contract out the signalman work. So that's another indication of a case of, if you want to call it a case of controversy, at least an active dispute. Those, at least to me, are the only allusions to the, in the arbitrator's decision to the agreement. The rest of it is in terms of, as if the board is a court, you know, saying any first-year law student knows you have to have a case of jurisdiction. So what about that? Well, your honor, the argument that Amtrak made was not limited to those provisions regarding subcontracting that your honor identified. Okay, you've got to either lean closer. I'm sorry, your honor. I'm working on fixing this, but it's very hard for me to hear. I've tried everything. I apologize, your honor. Okay. So the party's contract includes not just the written provision of subcontracting. It also includes various implied terms derived from industry common law concerning what a claim must contain. And so what Amtrak argued in its submission, and this is at joint appendix 33-35, it said as an initial matter, before you even get to the contract provisions that your honor is referencing, the claim is defective. It is procedurally defective because it does not include the necessary elements that a claim must include, including specific claimants. All right, you're in the claims process argument now. And where in the arbitrator's order was there anything about claims processing, about rule 56? I mean, he's talking in terms of jurisdiction over and over again. Your honor, both sides are pointing to different parts of the award. Yes, absolutely. And I completely agree that if this were a horse race, you would have arguments on both sides. But I don't need to win the horse race. I just need to have a horse. And here, the parts of the award that support our position include this language, again, the top of page joint appendix 18, where she says the original claim requests what is essentially a declaratory judgment, and then goes on to explain and to cite awards, other arbitration awards for the principle that the board's function is to resolve claims arising from established or determinable facts and issues. Okay, so that is a characterization of these implied contract terms. She then, in the most says the board agrees with the carrier that the claim is a request for an advisory opinion. That is an application of those contractual principles. So I have two questions. And really just stepping back just to help orient me to what's at stake. What is at stake on this appeal? Like the district court remanded this to the board? If Amtrak is correct, presumably, the board would just clarify what it meant, and tie this common law that you assert to some contract term, maybe mentioned Rule 56, and or say, yes, so so I'm just not sure why you came here instead of going back to the board. Two reasons, Your Honor. One is that Amtrak won below and is obviously not excited about giving up that victory. But second, in your view, it would just be a confirmation of that victory. Correct. If you go back to the board, if we were able to go back to this panel, and and here I need to stray outside the record that there's this panel no longer exists. And this arbitrator is no longer practicing, but it's no longer possible for the parties to return to this arbitrator and obtain a clarification of what she meant. So that I think informs Amtrak's reasoning for not wanting to re-arbitrate. If it's so clear, this is this common law that you say the union doesn't even, I mean, I'm going to ask them the same issue. I don't understand what's at stake in this case, really. But just on your point about about this question, whether they're asking for an advisory opinion, I didn't see any opinion, whether the ones in your appendix or there are many on the on the board's own site that ever cites Rule 56 or similar language as the source of it. And in fact, there are opinions that refer to it as arising from the statute. And if that's the case, then it is the case. Encompassed by the highly deferential review of an arbitration award, it's a statutory limitation on the board that we would have to look at. So it puts us in a really awkward position trying to read the tea leaves here and figure out where this comes from. Which is precisely why there is such broad deference to the arbitrator. I appreciate that there's broad deference very much, but there's also limits on it, as Judge Friedrich held. Absolutely. And the fact that this is a contractual basis for the board's ruling can be found in those awards that Amtrak cited. And these are referenced in our brief at page 17. We summarize them. Now, you may read them differently. You may interpret the details of them differently, but they are certainly arguably stating the principle that a claim cannot request an advisory opinion or be hypothetical. And you can certainly understand why the parties would have such a rule. You're talking about the bullets on page 17 about the different awards. Yes, Your Honor. Right. But they don't identify contracts as the basis of that. They don't link contractual language, let alone language that parallels the Rule 56 language that you refer to. And that, as I understand, Amtrak didn't argue before the board that Rule 56 was at issue. The board did not. Rule 56 came in in the court as a way of attaching this anti-advisory opinion principle to something in the contract. And even, I mean, you can help me with this, the notion that contractual, that sort of common law of the board is part of a contract. Is that what the board's common law looks like? I understand your question, Judge Blard. There is no case I'm aware of requiring that there be some express contractual language to incorporate industry common law. Rather, for the better part of 100 years, the railroad industry has maintained collective bargaining agreements that incorporate both express and implied terms. And those implied terms include this industry common law. So, to your question that those awards don't reference Rule 56 or any other express contract provisions, they don't need to. They are the contract. Arbitral awards, interpreting agreements, are part of the party's agreement. And how do we tell that this is contract common law as opposed to, let's say, part of the statute? Again, Your Honor, it comes back to the narrowest standard known to law. If my position is arguable, if it is conceivable, if it is plausible, if you would not sanction me for arguing that this arbitrator was relying on those contractual principles as opposed to a Article III standard or some statutory basis, then the court should affirm the award. And there are no doubt provisions in this award that suggest that she was relying on contractual principles. She cited the award that Amtrak put before her. Amtrak's submission does not say anything about Article III. It doesn't cite Title 28. It cites exclusively arbitral decisions that form this industry common law. That is the contract. All right. But at least my reading of the arbitrator order is one PLB was cited, and that was number 1202, which itself appears to be a jurisdictional decision because it states the protest does not involve a named claimant or dispute and dismiss for lack of jurisdiction. Your Honor, there's no doubt that for decades arbitrators have characterized these rules in jurisdictional terms. So that is the that is itself part of the way the parties contracts refer to these things. That doesn't mean that it is that it is technically legally accurate. But she didn't say I lack subject matter jurisdiction. She wasn't saying that I'm not I'm contradicting Judge Friedrich. And even though this case was sent to me for interpretation of contract language, this is not a case about interpretation. So there's no conflict. There's no conflict from a with respect to her use of the phrase jurisdiction to define this rule, which again, dozens, if not hundreds of arbitrators before her have so So just getting back to the there's two issues. One is the, you know, inconsistency with the use of the of jurisdiction. And the other is whether this is anything arising out of the contract. And going back to that, the rising out of the contract. So if if the rule that you refer to, which is this rule against advisory opinions, if it is derived from the Railway Labor Act, and I'm reading in a board opinion, the Railway Labor Act does not confer authority upon us to grant injunctive relief. Accordingly, the board cannot grant the claim sought in this case, if that's legally correct. It's your position, and that that is the source of this restriction. It's your position that that doesn't really matter, because it could, that could be wrong, it could be the common law of, of carrier bargaining, that it's it, that it actually is related to the contracts. I'm saying that it is at least arguable that this rule has contractual foundations, and has contractual contractual foundations, that the that offhand references to the Railway Labor Act that arbitrators may have used in any of these dozens or hundreds of cases that invoke this rule that there's no case law that they can't point to any statutory provision in the Railway Labor Act against advisory opinions. It doesn't exist. It's a contractual standard. So, so I'm so confused by this case, in part because when it went to the district judge the first time, was this argument not available then? Why wasn't the, the best position of Amtrak when this case first went to Judge Friedrich on the nature of the you're probably wishing this now, why wouldn't it have been Amtrak's position before the district judge actually judged neither? It's, it's non-dispute because under the contract it's not right. A couple of reasons. One, for the most part, there is no such thing as a neither major nor minor. A contract dispute is either a violation of section 27th, therefore major, or it implicates the interpretation and application of the agreements, procedural rules or substance. So I don't think it would have been open to Amtrak to say well this falls in some sort of nether region. Moreover, it is an interpretation and application of the agreement to decide this on a procedural ground. So there, there was an arbitration about the application of the contract. It's just that the union's claim was so defective here that they, what they should have done was refile it with specific claimants. If they had simply listed individuals who they said had been deprived at work, then this issue would not come up. That, so on, before we get to that though, you said there was an arbitration. Then why wouldn't Amtrak in the very first instance raise this back then? So if it's being arbitrated as minor, Amtrak doesn't raise it. Well, that was after remand from the district court. There was no arbitration in the first place before it went to. Correct. In the first time the parties were before Judge Friedrich, it was simply on this classification dispute. So, and I'm a little bit, it's a little bit unclear to me why this is seen as hypothetical and premature, given that the district court in its first opinion noted that Amtrak had already told the union it would be contracting out the REA building work, including the Signumon work. It just doesn't seem like it's based on a hypothetical set of facts that has yet to materialize. And in fact, with what we know about labor and employer communications, it seems much better. I mean, certainly this is something the parties could have bargained about. It seems much better if it's a process issue to work it out before Amtrak has gone and contracted out, you know, on the theory that if it doesn't have a right to do that, it would want to know that before it implicates reliance interests of new employees and puts work into hiring new people. So it's just unclear to me on these facts, what makes this hypothetical? Why is it seeking it? And I know that's, you know, pushing against what the arbitrator found, but just for my edification. Sure. Sure. So there are approximately four to 5,000 claims brought to the NRAB every year, and 99.9% of them follow the same format. They present a claim on behalf of named individuals with respect to specific relief. So they say Joe Smith and Mary Jones were deprived of work opportunities at the REA building from August 1st to August 30th due to the carriers' improper contracting out. And the relief sought is a day's pay for those individuals each day that they were deprived of those opportunities. That is a proper claim. The problem here was that the union didn't file that kind of claim. It was so eager to, I suppose, get this dispute before the board that it simply sought this generalized kind of you refuse to acknowledge claim, which no arbitrator, in my experience, has ever found to be appropriate. It was so eager to get to the board because Amtrak had told them it was outside the scope of the agreement. Yes, Your Honor. And they had every opportunity to say, to do exactly what I just described, and to file a claim that listed the claimants and requested the relief fund. Why wouldn't that be hypothetical? Why wouldn't the union bringing it on behalf of Joe Jones, who hasn't been deprived of any signal and work yet because Amtrak has simply said, we're not going to give it to you. It's outside the scope of the agreement. Then you have Judge Friedrich saying that you all told them it was going to be contracted out. I mean, how could they find a signalman who said I was deprived? Sure. So the way these subcontracting rules work is if the union contends that there's a violation, they bring a claim on the top of the seniority list or the bottom of the seniority list and contend that they were effectively deprived of work opportunity. It would be the bottom because this would be the first laid off. Although in most of these cases, no one has been laid off. Everyone is fully occupied and the union nevertheless can bring a claim saying that we should have nevertheless been given that work. But under these longstanding implied terms, past practice, custom of the parties, the way these are presented to the board is on behalf of a list of named individuals. So why does that make any sense? If Amtrak's response position is none of you, not a one of you, get any work. And so the union comes in and says, do I need to list the name of every single member? Do I need to kill trees doing that? What I'm here to say is they have said none of us get this work. Why does it excluded from this work? Why should that make any sense? Because for decades under the party's agreements, these claims are always decided on specific facts. Is that because all those claims where they had specifically named people also involved railroad saying, none of you, not one of you is going to get any work. I mean, that's really a question as to whether the agreement that the parties. No, I'm asking you the content. You refer to these practices where they name people. Does that apply when there's been a flat denial that this is even covered by the contract? None of you get any. Absolutely. And so what's wrong with them just saying we're here on behalf of all of them that do get work? I don't understand why there's anything, nothing hypothetical about that. Well, it's just like, you know, I can't bring a complaint in federal court that says, you know, I'm generally upset. Yeah, we're governed by article three. The arbitrators aren't. And the arbitrator is governed by the collective bargaining agreement. The collective bargaining agreement has rules. It requires there be a dispute. It also, I don't know where it says that you have to, it says, have any of these past cases said you must list people by name, even if it's every single member that's affected. It may say that you must present a claim involving specific violations, specific contentions supported by specific. That's what they've got here. Specific violation. You're refusing to even acknowledge the contracts covered on specific circumstances, new building. You're saying it's completely out. And here's the consequences. None of our people are getting any work. I don't know what's not specific about that. But your honor, that is. He came in and said all of our membership has been blocked off from working. We would, we might even find article three jurisdiction, right? We wouldn't require them to list every single member. They can speak on behalf of their membership. So the contract has some rule regarding what a claim must. If, if you didn't argue that, we absolutely didn't argue rule 56. He didn't cite it. No, no, no. We, we, we cited, we cited industry common law. But you didn't argue talking about the contract term. Are you talking about the rule 56? You're talking about the arbitration term, the precedent. I'm talking about, I'm talking about, so Amtrak absolutely invoked industry common law. I thought you were talking about rule 56 when you said. No, your honor. Rule 56 is sort of a, is a, an additional fact that supports the tractual basis of the claim. But, but if what your honor is saying that the arbitrator got it wrong and that the claim that the union presented was good enough, that's just error. That's just an application of the agreement, which is never reviewed. But in other words, as judge Posner said in Hill, we're not here to assess whether the arbitrator did their job. Well, we're just simply here to just decide whether they were interpreting the contract and here that the real dispute comes down to, can you interpret, can you interpret this as having some contractual foundation or is the only way to read this by pointing to the specific parts of it that refer to jurisdiction? My argument is that while you can look at the fundamental principle of jurisprudence and the language about beyond the board's jurisdiction, the other things that the union is pointing to, it is equally, if not more plausible to look at the fact that the board says we agree with the carrier. That's an agreement with the argument that the carrier made. And under this course decision in Verizon, that is contract interpretation. We agree with the carrier. What was the rest of that? We agree with the board, agrees with the carrier that the claim is a request for an advisory opinion. And therefore, beyond that, and that's the part that the union. And my point is that while you can point to specific phrases on both sides, it doesn't matter as long as there's anything in this award that supports our position. So this is where, I mean, maybe I've already beaten this dead horse, but the Supreme Court in Union Pacific Railroad held that the board cannot impose its own jurisdictional rules. And how are we to be sure that the rule the board imposed here is not actually jurisdictional? It refers to jurisdiction. It frames it in jurisdictional language. What's the standard that we should use for determining whether the board is implementing a procedural claims processing rule versus a jurisdictional? Well, Your Honor, in Union Pacific, the Supreme Court did not say the board may not characterize contractual rules as jurisdiction. Rather, what it said is that there are some circumstances in which doing so has consequences for the parties. And in that case, the particular problem was that if it were not deemed jurisdictional, the carrier would have forfeited the argument. So it had meaning for the outcome. But there are plenty of circumstances that the jurisdictional has no consequences. I'll give you one example. In Steel Company, it's a Scalia opinion from 1998. We're super familiar with that one. Justice Scalia refers to drive-by jurisdictional ruling. And he says, look, if it doesn't matter, if nothing turns on the designation of it as jurisdictional, then so what? It doesn't make any difference. And we don't overturn arbitration awards because arbitrators use legal terms inaccurately. That was the point of this court's opinion in national mail handouts. Arbitrators try to emulate courts at times, and they don't always get it right. But unless you can't say they were interpreting the contract, unless you have to say they were, this arbitrator was applying Article III without regard to contract at all, well, then the award must stand, even if you disagree with her reason. If there's no more questions, we'll give you a couple of minutes. Thank you. Mr. Edelman. I'm Richard Edelman for the Brotherhood of Railroad Signalmen. I do want to address what I think is the fundamental problem with the Amtrak's argument, but maybe I'll start with her question about why are we here. And we're here because the union filed a complaint under the Railway Labor Act saying this is a major dispute. You have unilaterally changed the burden. Amtrak said, no, it's at least arguable that we have a contract. It's a minor dispute. You need to take that to arbitration. The union took that exact claim. I know because I basically wrote it. I said, this is what we wrote to the district court in the cause of action part of the claim and said, this is what we got told to arbitrate. We're taking it to arbitration. And Amtrak says, no, you don't get to arbitrate that. It's the thing that we told the district court has to be arbitrated. You can't arbitrate. And then the arbitrator goes and holds, I have no jurisdiction to decide this issue that the district court said is a minor dispute, that is a matter of statute, I'm supposed to decide. And then does it, say using the word fundamental principles of jurisdiction, civil procedure, case or controversy, as your honor has noted, this is stuff we as lawyers all know. In fact, she chides people for not knowing what law students ought to know is using those terms of jurisdiction. And to the extent that Amtrak claims, well, she referred to this PLB 1202, as the district court noted, that is clearly in the discussion of what Amtrak's position is. But on DA 17, the arbitrator describes the carrier's position as the claim must be dismissed because it is procedurally defective. She agrees with the carrier's position. Well, no, she agrees with the carrier's position, it's a request for advisory opinion, and then explains why. And the point, everything above... Procedurally defective to seek an advisory opinion. Well, that she says it's an advisory opinion, and then she says why. And just to point, just to be clear, everything... I'm just asking if the, if she, if it's just a question for you, if, if in one moment, the arbitrator describes the carrier position as involving procedural defects, requiring the claim to be dismissed. And, or, and in other sections describes it in terms that to courts sound like jurisdictional. So you've got both language from the arbitrator, both of which they say requires dismissal. And then she says, I agree with the carrier. Who are we supposed to, how are we supposed to determine which label that she, having picked both, jurisdiction and procedural defect, how are we supposed to choose if, as long as it's 50-50, that it was procedural defect rather than jurisdiction, doesn't that mean the arbitration award stands? Because she didn't pick both. She explained exactly what her ruling was. When you're talking about joint appendix 17, that's a recitation of what the railroad's position is. And I suppose to Mr. Right, no, I understand that. But then, how she describes the carrier's position matters because she said, the board agrees with the carrier. But then explain, plenty of people go into court. In fact, I went into Judge Friedreich's case saying, this is why you ought to vacate the award. Judge Friedreich said, well, I'm not really going there. I'm going here. Just because a party advances an argument and the decision maker reaches the result that argument would lead to, but if the decision maker bases it on an entirely different reason, they're not buying the presentation of the party. The district court said, you should rule for me for reason A and reason B. The district court says, I agree with you. I'm dismissing the case. Stopped right there. That's different. Because you don't, because you don't have to pick which one because she explains exactly here. I'm asking you that if there's ambiguity, because there's two different descriptions of the same thing, because she describes what the procedural defect is. No claimants, no specific work, no monetary relief. Those are advisory opinion language. So she says sometimes she calls this advisory opinion because you got no claimant, no specific work, no requested monetary relief as procedurally defective. And then sometimes she describes it as jurisdictional. And given that we have to make a decision as to what she was doing. When you have to persuade us that she was going all the way from, it is not a procedural defect and it is not even a contractual jurisdictional limitation. You have to convince us that she was jumping all the way to statutory jurisdictional limitation to have vacature. And we have to conclude that. And it's hard to conclude that when she's calling the same thing, sometimes jurisdiction, sometimes procedurally. I don't think she did. I think if you look at what she actually said. She would, she exactly said on GA17. GA17 is just a recitation of what said. Say this one more time. Maybe not to you, to me. Judge says, I agree with the party's argument and the court's description of what that party's argument is matters. Is it your position that I'm incorrect? No, but I would say here, here's what I would say is how she describes, please let me finish. It matters how she describes the party's argument. When she says, I'm agreeing with that. And you're right. She says, I agree. It's a request for an advisory opinion. That is what the procedural defect is that she finds. And that's also what she talks about in the language that you do like about jurisdiction. If I may, I think had the arbitrator just written, the board agrees that the claims request for an advisory opinion, and therefore beyond the board's jurisdiction, maybe that comes into play. But then she went on to say exactly what she meant. And then she said, and that this is a matter of jurisprudence, case or controversy, all of that. She reached the same result. There's no contention, no evidence that Kerry has assigned any communications work at the state. What she said on Jay 17 about why it was procedurally defective. So she's going back and forth. I don't think so. It's going back and forth. If I read, okay, then let's try a different thing. If, if I were to read this is going back and forth, what's the rule of decision for review of arbitrators? If you believe that the award is ambiguous, you would not make it. I do not think the award is ambiguous. I think the award is very clear as you hear. I want to point out one other thing about you started right where I was, where my attention was, but I felt like you didn't get a chance to complete it in terms of what's at stake on this appeal for the union. If the problem with the initial grievance was ripeness, is that something you can hear now? What's happened since then? Let me, let me start with your specific question. If it goes to Mr. Monroe's point about, well, there's no harm here, but there is harm here. There is harm here because if our people aren't, they say you could just file a claim in another point, but if our people aren't in the building, how do we know when the work is being done by a manager or by a contractor? We don't know. We do know that Amtrak has told us, as your honor has noted, this is not your work when I give it to you. I also told you the April 2017 letter that says, hey, contract worker is underway. Got a contractor doing it, and here's what they're doing. Amtrak sends these notices, and I believe I'm doing this from memory, so I apologize if it's wrong. My recollection was this is a courtesy notice that we're contracting out this work. That doesn't mean we're going to get a notice the next time. No, but you've got a notice that they contracted out the work. That certainly makes it more ripe than before that. But the point is, we don't know. Our goal of our entire, the beginning of the litigation, everything was to say, you now own this building, Amtrak. We have a scope rule that we do this type of work. It should be under our agreement. You should agree to that. They said no. But I want to get to the point, if we don't have people in the building, then we don't know when they're violating the contract. Can you file an information request? No, there's no information request. Why couldn't you, under the contract, say, ask them to tell you, you send a letter every week, every month, saying, have you started this? Because that is definitely relevant to an asserted unfair labor practice or bargaining violation. You might be wrong, but that doesn't mean you don't get the information. So there are no information requests. There is no RLA right to information in order to file a grievance like there is under the NLRA. And also, the other point about when you file individual claims, though individual claim, you know, Joe or Anne's signal person says, on X date, somebody did the work here. And I should be able, I should have paid eight hours of overtime. What RLA awards are non-precedential. That does not resolve the question of, does the scope rule actually apply there? Because Amtrak would argue in the next case, that's just that case, that person, that day, that specific work. The question the district court said had to be arbitrated was the question of, does the scope rule apply there? And this is another thing I want to point out. The difference between all the awards that Mr. Monroe cited in this case is that all of those were filed on the property, you know, through the grievance procedure. This case came because the district court ruled in their favor on their argument that the claim presented to me must be arbitrated. And that's entirely different from that entire body of law that Mr. Monroe cited, because the district court under the Conrail case makes the definitive determination, is the case major or minor. And in fact, the case is not minor until a district court says it is. Supreme Court in Conrail said it is up to the statutory duty of the board to decide that issue. And this question of whether or not in cases of individuals filing claims, whether there's a named person involved is different than in that situation. And that's why this case is here. That's why it matters. So you did argue in your briefing that there's no legal or contractual requirement for there to be a live dispute to grieve or arbitrate a contract interpretation issue. Where do you get that? Because Mr. Monroe has said that you don't dispute, it's undisputed that the contract incorporates industry common law, the board doesn't dispute this industry common law rule, that advisory opinions are beyond the arbitrators can. Well, so I think that rule is frankly not. And this applies Article 3. But the point is, in this case, this case was referred from the district court on their motion, whatever happens when go around signal person wants to file a claim, or whatever is different than here. We need some doctrinal framework for that. I understand the argument that it was referred by the district judge as a minor dispute, not a major dispute. What I take Amtrak's position to be was that, well, all that means is in that categorization, it belongs on the side of the line. That doesn't mean that it necessarily checks all other boxes of procedural adequacy. Now, your response to that could be, well, if this is a non-jurisdictional point, they should have raised that before the district judge and said, actually, whichever side of the line it's on, it's hypothetical. I don't hear you to be arguing that. So it's not clear to me that it's inconsistent to say, the dispute is minor, if anything. And then ultimately, for the arbitrator to say, actually, there's no live dispute here at all. So help us where doctrinally. Sure. Doctrinally, it comes from the, I believe it comes from the Conrail case and from Section 3 of the Railway Labor Act. The board, the NRAB, is created to decide contract interpretation disputes. The court has held in the Chicago River case that arbitration of minor disputes is mandatory. We may not strike over them. The company is obligated to engage in arbitration, and the arbitration awards are enforceable. The Supreme Court said that characterization of dispute as major or minor basically depends initially on the pleading. One party takes its position, and it's up to the district court to decide. They are the classifiers of the dispute. Once the district court did that and said, it's a minor dispute, and we took, again, exactly the same claim, the claim that they said is minor. They didn't tell the district court, but if they bring it here, bring it to arbitration, we're going to say it's not arbitrable. So we took to arbitration deliberately the claim that we presented to the district court that the district court said had to be arbitrated. And the arbitrator said, I don't have jurisdiction. And that, we think, was decision-based, did not draw its essence from the agreement, and frankly, beyond that, is a failure of the board to do its duty under the statute, to adjudicate, to arbitrate a minor dispute. If it was erroneous, I mean, just putting aside, let's dial back to before Judge Friedrich characterized this as major or minor, the notion that you might have had to bargain an analog to E11, the provision that included another property. Yes. If, legally, that's correct, that you needed to do a bargaining, would that happen under the auspices of major dispute? If we were bargaining to change the agreement, that would be under Section 6 of the Railway Labor Act. That would be a major dispute. And that, so if the position is that you can't, I guess, that you can't, I mean, their position, part of their position on the merits is that this doesn't cover because you haven't bargained for it. Could you just request bargaining on that, or do you have to? We could do that, and the next time we open bargaining, we could do that, but to your point, Your Honor, let them make that argument. You know, they made that argument. The arbitrator should have ruled on that arbitrator. If the arbitrator ruled and said, sorry, union, the scope rule does not apply to this building because in prior cases, you did bargain to change the scope rule and ruled on the merits, then the arbitrator would have performed her duty, would have complied with the referral from the district court, and we would have lost, we would have gone ahead and then, you know, the next round of bargaining, go ahead and say, okay, now we want to do that. But was there a way when you originally filed this that had it been characterized as major, you would have had a prompt opportunity then? So there is a more, well, collective bargaining agreements have moratorium clauses, so during the period when this was occurred, we could not begin Section 6 bargaining. So we could not have served a notice at that time. I mean, I suppose Amtrak could have said, hey, you know what, let's just clear this up and we'll bargain and put this under the agreement with everything else, but they had no obligation to do that or engage with us. If there are no more questions, I do have a real world question, and that is, has the signalman work been done at the REA building? It's been six or seven years since this began. We don't know. Our people aren't there. We don't know. It's not something you can. So the REA building, actually, along the tracks here at Union Station, it is a separate building, and so we don't have any role in that building. We don't know. We do not know whether the specific work there is being done, and I should also point out, just with regard to the question of a contracting out notice, if they do this with exempt employee managers, they certainly wouldn't give us notice. Would you say, if they did it with managers, what? They would not give us notice at all, even as a courtesy. And can I ask a quick fact question too, and that is, does your collective bargaining agreement, does it include an arbitration clause, or you just don't even bother with that under this statutory scheme? So, yeah, Railway Labor Act arbitration, unlike NLRA arbitration, is statutory. And so you don't have. We don't have that. And by the way, that's a little bit also goes to the difference between some of these cases where courts talk about arbitrators confusing jurisdiction and procedural, because if you're under the NLRA, arbitration is contractual. And the question of jurisdiction of the arbitrator there relates to, does the contract actually require you to arbitrate this? Under the Railway Labor Act, there is no statutory, if it is a contract interpretation. I understand that, I was just asking if you also had an arbitration. No, it doesn't. Thank you, Your Honor. Can you finish what you need to say in two minutes? Yes, Your Honor. Okay. Very quickly, let me address Mr. Edelman's primary argument, which is that once the district court decided this was minor, it had to be decided on merits. I'm not aware of any case that has ever said that a referral of a matter to arbitration means the carrier has waived its procedural defenses. If this board had said, we lack subject matter jurisdiction because this is a statutory dispute or not a question of interpretation of the agreement, I would agree with Mr. Edelman. But there's nothing in this award that even remotely suggests that that was what the board was doing. As this court has said, parties and courts and arbitrators use the phrase jurisdiction to mean all kinds of things, personal, subject matter, Article III standing, venue. It can even refer to the kinds of relief that a tribunal can authorize. So there's nothing here to suggest that the board was saying something inconsistent with Judge Friedrich's decision. Can you answer Judge Henderson's question? If there was any signal in work in this building, is it done? Actually, it's not in the record and I don't know, Your Honor, but I will say this. It's been a long time. I'm sorry? It's been a long time since you started contract work. It is literally not in the record. I have no idea. But I can say this. It is astonishing to me that the union would suggest they have no idea. Because one of the most fundamental... They have no idea and it's your building, so I don't know why it's astonishing they don't know. Because it's the union's obligation to police the agreement. It is one of the foundational principles of labor law. They have a collective bargaining agreement. If they believe it's... Are they supposed to know this? They can go to the building and see what's happening. I mean, this happens all the time. How do they know that there's subcontracting going on? Already in the building, right? Sorry? The client's already in the building, right? Again, I mean, it's right over there. Go take a look. They could go at any time. And this happens all the time. I mean, there's contracting out that happens... Just curious that you expect them to know, but you don't know. That's kind of curious to me. It's your building. Well, your honor, it's just not in the record. So I suppose if I were the vice president of labor relations at Amtrak, maybe I would, but it's just not in the record. So I can't say one. The last point I'll make is to your point, Judge Millay, about if it's 50-50, how do we decide? Well, if it's 50-50, your job is done. The award must stand. Thank you. Thank you.
judges: Henderson, Millett, Pillard